No. 25-1339

# IN THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

vs.

MATTHEW DAVID KEIRANS,

Defendant-Appellant.

*Appeal from the United States District Court
For the Northern District of Iowa
Honorable C.J. Williams, Chief Judge*

## BRIEF OF APPELLEE

TIMOTHY L. VAVRICEK
Assistant United States Attorney
Northern District of Iowa
111 Seventh Avenue SE, Box 1
Cedar Rapids, Iowa 52401
(319) 363-6333
(319) 363-1990 (fax)
tim.vavricek@usdoj.gov

# SUMMARY OF THE CASE

Defendant Matthew David Keirans appeals his 144-month sentence after he pled guilty to one count of making a false statement to a national credit union administration insured institution and one count of aggravated identity theft. He also argues that the district court erred in imposing two conditions of supervised release.

Oral argument is unnecessary, but if it is granted, the government requests ten minutes.

i

Appellate Case: 25-1339    Page: 2    Date Filed: 10/08/2025 Entry ID: 5565739

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE ............................................................................i

TABLE OF CONTENTS ...............................................................................ii

TABLE OF AUTHORITIES..........................................................................iv

JURISDICTIONAL STATEMENT .................................................................1

STATEMENT OF THE ISSUES....................................................................1

STATEMENT OF THE CASE .......................................................................2

    Relevant Procedural History ..................................................................2

    Rulings Presented for Review...................................................................9

    Statement of the Facts...............................................................................9

    B.     The District Court's Sentencing Findings ............................17

SUMMARY OF THE ARGUMENT .......................................................27

ARGUMENT ..........................................................................................29

I.    Defendant's Sentence Was Substantively Reasonable..................29

    A.    Standard of Review ..............................................................29

    B.    The District Court Did Not Abuse its Discretion in Varying Upward from the Advisory Sentencing Guidelines in Light of Defendant's Aggravating Offense Conduct ...............................................................................30

Appellate Case: 25-1339    Page: 3    Date Filed: 10/08/2025 Entry ID: 5565739

II. The District Court Did Not Abuse Its Discretion in Imposing a Mental Health Condition ........................................................... 36

    A. Standard of Review .................................................................. 36

    B. A Mental Health Condition Was Appropriate for Defendant ................................................................................. 36

III. The District Court Did Not Plainly Err in Imposing a Substance Abuse Condition ........................................................... 40

    A. Standard of Review .................................................................. 40

CONCLUSION ..................................................................................... 44

CERTIFICATE OF FILING AND SERVICE .......................................... 46

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS ................................................................................. 47

iii

Appellate Case: 25-1339    Page: 4    Date Filed: 10/08/2025 Entry ID: 5565739

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page**

**Federal Cases**

*United States v. Adams*, 12 F.4th 883 (8th Cir. 2021) ...................... 1, 36

*United States v. Bates*, 614 F.3d 490 (8th Cir. 2010) ............................. 30

*United States v. Bridges*, 569 F.3d 374 (8th Cir. 2009) ......................... 32

*United States v. Bryant*, 754 F.3d 443 (7th Cir. 2014) ..................... 41, 42

*United States v. Candie*, 974 F.2d 61 (8th Cir. 1992) ............................ 30

*United States v. Feemster*, 572 F.3d 455 (8th Cir. 2009) .................... 1, 29

*United States v. Haskins*, 101 F.4th 997 (8th Cir. 2004) ....................... 33

*United States v. Hicks*, No. 21-1732, 2022 WL 711546 (8th Cir. Mar. 10, 2022) ............................................................................................... 39, 44

*United States v. Holmes*, 87 F.4th 910 (8th Cir. 2023) .......................... 31

*United States v. Johnson*, No. 24-1769, 2025 WL 2406862 (8th Cir. Aug. 20, 2025 ................................................................................................. 29

*United States v. Kappes*, 782 F.3d 828 (7th Cir. 2015) .......................... 42

*United States v. Kent*, 209 F.3d 1073 (8th Cir. 2000) ........................... 38

*United States v. Mayo*, 642 F.3d 628 (8th Cir. 2011) ............................ 36

*United States v. Nosley*, 62 F.4th 1120 (8th Cir. 2023) ......................... 29

*United States v. Poitra*, 648 F.3d 884 (8th Cir. 2011) ........................... 40

*United States v. Pratt*, 142 F.4th 1090 (8th Cir. 2025) .......................... 33

*United States v. Ristine*, 335 F.3d 692 (8th Cir. 2003) .......................... 42

*United States v. Roberts*, 687 F.3d 1096 (8th Cir. 2012) ....................... 40

Appellate Case: 25-1339     Page: 5     Date Filed: 10/08/2025 Entry ID: 5565739

*United States v. Schultz*, 845 F.3d 879 (8th Cir. 2017) ...............1, 40, 41

*United States v. Sherwood*, 850 F.3d 391 (8th Cir. 2017).......................41

*United States v. Smith*, 961 F.3d 1000 (8th Cir. 2020).........................41

*United States v. Soliz*, 857 F.3d 781 (8th Cir. 2017)........................29, 35

*United States v. Thomas*, 149 F.4th 972 (8th Cir. 2025) .......................36

*United States v. Trimble*, 969 F.3d 853 (8th Cir. 2020).........................38

*United States v. Wickman*, 988 F.3d 1065 (8th Cir. 2021) .....................31

*United States v. Williams*, 30 F.4th 796 (8th Cir. 2022) .......................38

**Federal Statutes**

18 U.S.C. § 1014 ...............................................................................2, 3

18 U.S.C. § 1028A....................................................................................2

18 U.S.C. § 1028A(a)(1) .......................................................................3, 8

18 U.S.C. § 3231 ......................................................................................1

18 U.S.C. § 3553(a) .......................................................... 1, 6, 8, 18, 25

18 U.S.C. § 3583(d) ............................................................................1, 36

18 U.S.C. § 3583(d)(2)......................................................................38, 43

28 U.S.C. § 1291 ......................................................................................1

**Federal Rules**

USSG §2B1.1 .........................................................................................4, 5

USSG §2B1.1(a)(1)................................................................................3, 6, 7

USSG §2B1.1(b) ........................................................................................6

USSG §2B1.1(b)(1)...................................................................................5, 7

Appellate Case: 25-1339   Page: 6   Date Filed: 10/08/2025 Entry ID: 5565739

USSG §2B1.1(b)(1)(E)...............................................................3, 6

USSG §2B1.1(b)(10)(C)............................................................3, 7

USSG §2B1.1(b)(11)...................................................................6

USSG §2B1.1(b)(16)...................................................................6

USSG §3A1.1 ...............................................................................6

USSG §3A1.1(b)(1).................................................................3, 5, 7

USSG §3A1.3 ......................................................................3, 4, 5, 6, 7

USSG §5K2.3 ...........................................................................4, 5

USSG §5K2.4 ...........................................................................4, 5

USSG §5K2.8 ...........................................................................4, 5

Appellate Case: 25-1339    Page: 7    Date Filed: 10/08/2025 Entry ID: 5565739

# JURISDICTIONAL STATEMENT

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. On February 3, 2025, the court entered an amended final judgment, and on February 14, 2025, defendant filed a timely notice of appeal. This Court has jurisdiction over this criminal appeal pursuant to 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUES

**I.** ***Whether Defendant's Sentence Was Substantively Reasonable?***

*United States v. Feemster*, 572 F.3d 455 (8th Cir. 2009) (en banc)
18 U.S.C. § 3553(a)

**II.** ***Whether the District Court Abused its Discretion in Requiring Defendant to Undergo a Mental Health Evaluation and Any Recommended Treatment?***

*United States v. Adams*, 12 F.4th 883 (8th Cir. 2021).
18 U.S.C. § 3583(d)

**III.** ***Whether the District Court Plainly Erred in Requiring Defendant to Undergo a Substance Abuse Evaluation and Any Recommended Treatment?***

*United States v. Schultz*, 845 F.3d 879 (8th Cir. 2017)
18 U.S.C. § 3583(d)

1

## STATEMENT OF THE CASE

**<u>Relevant Procedural History</u>**

On December 12, 2023, a grand jury returned a seven-count indictment against defendant. (R. Doc. 14, at 1-3.[1]) Counts 1 through 5 charged defendant with making a false statement to a national credit union administration insured institution in violation of 18 U.S.C. § 1014. (R. Doc. 14, at 1-2.) Counts 6 and 7 charged defendant with aggravated identity theft in violation of 18 U.S.C. § 1028A. (R. Doc. 14, at 2-3.)

On April 1, 2024, defendant pled guilty to Counts 5 and 7 of the indictment. (R. Doc. 25, at 1.) Defendant pled guilty pursuant to a plea agreement with the government. (R. Doc. 27, at 1-24.) Defendant's statutory range of imprisonment, therefore, was up to 30 years of imprisonment for Count 5 with a mandatorily consecutive two-year

---

[1] "R. Doc." refers to the district court docket in case number 23-CR-1020-CJW-MAR, "Def. Brief" refers to defendant's opening brief, "TR" refers to the sentencing hearing transcript, and "PSR" refers to the second final revised presentence investigation report (R. Doc. 37); some references are followed by page numbers. "Gov. Ex. __" and "Def. Ex. __" refer to evidence admitted at the sentencing hearing.

Appellate Case: 25-1339     Page: 9     Date Filed: 10/08/2025 Entry ID: 5565739

sentence for Count 7.  (R. Doc. 27, at 1-2; PSR, at 36 (PSR ¶¶ 111, 112); 18 U.S.C. § 1014; 18 U.S.C. § 1028A(a)(1).)

On October 23, 2024, the United States Probation Office ("USPO") issued defendant's PSR.  (PSR, at 1-48.)  With respect to the advisory sentencing guidelines for Count 5, the USPO recommended that the district court determine defendant's base offense level was 7, pursuant to USSG §2B1.1(a)(1); apply an 8-level increase because defendant should be held accountable for more than $95,000 in loss, pursuant to USSG §2B1.1(b)(1)(E); impose a two-level increase for sophisticated means under USSG §2B1.1(b)(10)(C); assess a two-level increase because W.W. was a vulnerable victim, pursuant to USSG §3A1.1(b)(1); apply a two-level increase for victim restraint, pursuant to USSG §3A1.3; and grant defendant a three-level reduction for acceptance of responsibility under USSG §3E1.1.  Based on an adjusted total offense level of 18 and a criminal history category of I, the USPO recommended that the district court calculate defendant's advisory sentencing guidelines range to be 27 to 33 months of imprisonment.  (PSR, at 36 (PSR ¶ 113).)

Appellate Case: 25-1339    Page: 10    Date Filed: 10/08/2025 Entry ID: 5565739

The USPO also identified five provisions that each might independently warrant an upward departure in defendant's case. (PSR, at 43 (PSR ¶¶ 143-147).) First, the USPO stated that an upward departure may be appropriate under USSG §2B1.1, comment (n.1), because defendant's offense level substantially understated the seriousness of his offense. (PSR, at 43 (PSR ¶ 143).) Second, the USPO cited USSG §3A1.3, comment (n.3), which provides that an upward departure may be appropriate if the victim restraint was sufficiently egregious. (PSR, at 43 (PSR ¶ 144).) Third, the USPO identified USSG §5K2.3, which provides that an upward departure may be appropriate if a victim suffered psychological injury much more serious than that normally resulting from commission of the offense. (PSR, at 43 (PSR ¶ 145).) Fourth, the USPO cited USSG §5K2.4, which states that an upward departure may be appropriate if a person was abducted, taken hostage, or unlawfully restrained to facilitate the commission of the offense. (PSR, at 43 (PSR ¶ 146).) Fifth, the USPO stated that an upward departure under USSG §5K2.8 may be appropriate on account

4

of unusually heinous, cruel, brutal, or degrading conduct to the victim. (PSR, at 44 (PSR ¶ 147).)[2]

For Count 7, the USPO stated that a consecutive two-year prison sentence was mandatory without regard to the length of sentence imposed upon Count 5.  (PSR, at 36 (PSR ¶¶ 111-113).)

Before defendant's sentencing hearing, defendant filed a sentencing memorandum and motion for downward departure and/or variance.  (R. Doc. 44, at 1-39.)  With respect to the USPO's guidelines calculations, defendant objected and argued his offense caused no loss and, therefore, no increase under USSG §2B1.1(b)(1) was appropriate. Defendant also maintained that the two-level vulnerable victim enhancement under USSG §3A1.1(b)(1) did not apply.  (R. Doc. 44, at 5-11, 23-27.)   Further, defendant resisted any upward departure under USSG §2B1.1, comment (n.1), USSG §3A1.3, comment (n.3), USSG §5K2.3, USSG §5K2.4, or USSG §5K2.8.  (R. Doc. 44, at 34-38.) Defendant concluded an aggregate sentence of no greater than 54

---

[2] The USPO "noted that presentation of information in this section does not necessarily constitute a recommendation for a departure by the probation office."  (PSR, at 44 (PSR ¶ 148).)

5

Appellate Case: 25-1339     Page: 12     Date Filed: 10/08/2025 Entry ID: 5565739

months of imprisonment was appropriate for Counts 5 and 7 after consideration of the factors at 18 U.S.C. § 3553(a).  (R. Doc. 44, at 39.).[3]

In its pre-hearing sentencing memorandum, the government objected to the USPO's proposed guidelines calculations and argued the district court should calculate defendant's advisory sentencing guidelines as follows: a base offense level of 7, pursuant to USSG §2B1.1(a)(1); a 12-level increase for loss, pursuant to USSG §2B1.1(b)(1)(E); a two-level increase for substantial financial hardship, pursuant to USSG §2B1.1(b)(2)(A)(iii); a two-level increase for sophisticated means, pursuant to USSG §2B1.1(b)(10(C); a two-level increase for multiple means of identification, pursuant to USSG §2B1.1(b)(11); a two-level increase for risk of serious bodily injury, pursuant to USSG §2B1.1(b)(16); a two-level increase for vulnerable victim, pursuant to USSG §3A1.1.(B)(1); a two-level increase for physical restraint, pursuant to USSG §3A1.3, and a three-level decrease for acceptance of responsibility under USSG §3E1.1.  Based on a total

---

[3] Defendant noted this recommendation "assumes that the Court finds either an advisory range higher than 54 months or that it departs beyond 54 months."  (R. Doc. 44, at 39, n.15.)

Appellate Case: 25-1339   Page: 13   Date Filed: 10/08/2025 Entry ID: 5565739

offense level 28 and a criminal history category I, the government argued defendant's guidelines range for Count 5 should be 78 to 97 months of imprisonment. (R. Doc. 49, at 15-16.) The government then requested an upward departure and/or variance to a 180-month sentence on Count 5, with a consecutive 24-month sentence on Count 7, for an aggregate 17-year prison term. (R. Doc. 49, at 17-20.)

On January 31, 2025, the district court held defendant's sentencing hearing. With respect to Count 5, the district court sustained defendant's objections in part and overruled the government's objections. The district court found defendant's base offense level was 7, pursuant to USSG §2B1.1(a)(1); no enhancement for loss applied under USSG §2B1.1(b)(1); a two-level increase for sophisticated means applied under USSG §2B1.1(b)(10)(C) and, further, defendant's offense level should be increased to 12 under that provision; a two-level increase applied because W.W. was a vulnerable victim, pursuant to USSG §3A1.1(b)(1); a two-level increase for victim restraint was appropriate, pursuant to USSG §3A1.3; and defendant should receive a three-level reduction for acceptance of responsibility under USSG §3E1.1. (TR 38-40.) Based on a total offense level of 13 and a criminal

7

history category of I, the district court found defendant's guidelines range for Count 5 was 12 to 18 months of imprisonment. (TR 40.) The district court determined the range for Count 7 was an additional 24 months, as required under 18 U.S.C. § 1028A(a)(1). (TR 10.)

The government requested an upward departure and/or variance to the midpoint of the statutory range for Count 5, that is, 15 years of imprisonment, with an additional two-year mandatory consecutive sentence on Count 7, for a total prison term of 17 years. (TR 52-56.) Defendant requested not more than 5 years of imprisonment. (TR 68.)

The district court varied upward and imposed a sentence of 120 months of imprisonment on Count 5. (TR at 89.) The district court stated that some of the five upward departure provisions that the USPO had identified in the guidelines were "informative to the Court" (TR 87) and "there are some guidelines to kind of speak to some of the nature and circumstances of the offense here, but the Court chooses not to be bound or constrained by the language of the guideline provisions." (TR 88). After considering the factors at 18 U.S.C. § 3553(a), the

8

district court varied upward to an aggregate sentence on Count 5 and Count 7 of 12 years, or 144 months, of imprisonment.  (TR 89.)[4]

## Rulings Presented for Review

Defendant argues the district court's upward variance was substantively unreasonable.  Defendant also argues the district court erred in requiring defendant to undergo mental health and substance abuse evaluations, and follow any recommended treatment, as conditions of his supervised release.

## Statement of the Facts

### A.     Defendant's Offense Conduct

The offense conduct consists of stipulated and otherwise undisputed facts:[5]

---

[4] The district court later decreased defendant's sentence by 30 days for time served in state court.  (TR 89 (citing PSR ¶ 75).)

[5] The stipulated facts are set forth at further length in Paragraphs 9(A) through 9(QQ) of the parties' plea agreement (R. Doc. 27, at 3-14). The offense conduct portion of defendant's PSR (PSR, at 5-17 (PSR ¶¶ 6-57)) is largely undisputed and is consistent with the factual stipulations in the plea agreement.  The government does not repeat all the undisputed facts here.

In approximately 1988, defendant and W.W. were homeless men working at a hot dog cart in Albuquerque, New Mexico. (PSR, at 6 (PSR ¶ 8).) Soon thereafter, defendant assumed W.W.'s identity. (PSR, at 6 (PSR ¶ 8).)

For the next three decades, defendant used W.W.'s identity in every aspect of his life. (PSR, at 6 (PSR ¶ 9).) Defendant obtained employment, insurance, a social security card, driver's licenses, titles, loans, and various forms of credit using W.W.'s identity. (PSR, at 6-7 (PSR ¶¶ 9, 17, 18).) There is no record of defendant ever using his true name, date of birth, or social security number after 1988. (PSR, at 6 (PSR ¶ 9).)

In 2013, while using W.W.'s identity, defendant began working at an Iowa City, Iowa, hospital as a high-level administrator in its information technology department. (PSR, at 7 (PSR ¶ 19).) Defendant's access to, and role in, the system architecture of the hospital's computer infrastructure "was the highest it could be" and defendant "was the key administrator of critical systems." (PSR, at 7 (PSR ¶ 19).) By the time his employment at the hospital ended in 2023, defendant was earning a six-figure salary in his high-level position.

10

(PSR, at 7 (PSR ¶ 20).)  Defendant worked remotely from Hartland, Wisconsin.  (PSR, at 7, 10 (PSR ¶¶ 19, 26).)

Between March 2014 and May 2022, and while employed by the Iowa City hospital under W.W.'s identity, defendant obtained nine personal and vehicle loans from two federally insured credit unions within the Northern District of Iowa.  (PSR, at 9 (PSR ¶ 25).) Specifically, defendant used W.W.'s name, social security number, and date of birth to obtain over $266,000 in loan proceeds.  (PSR, at 9 (PSR ¶ 25).)  Defendant did so without lawful authority and in order to deceive and defraud.  (PSR, at 9 (PSR ¶ 25).)

Meanwhile, W.W. remained homeless and transient.  (PSR, at 10 (PSR ¶ 26).)  On August 20, 2019, W.W. entered a branch of a national bank in Los Angeles, California.  (PSR, at 10 (PSR ¶ 26).)  W.W. approached an assistant branch manager's window and told the assistant branch manager that he had recently discovered someone was using his credit and had accumulated large amounts of debt.  (PSR, at 10 (PSR ¶ 26).)  W.W. stated he did not want to pay the debt and wished to close his accounts at the bank.  (PSR, at 10 (PSR ¶ 26).) W.W. explained an unknown individual had used his name and social

11

Appellate Case: 25-1339     Page: 18     Date Filed: 10/08/2025 Entry ID: 5565739

security number, causing $130,000 in debt, and requested to know his full account numbers so he could close the accounts. (PSR, at 10 (PSR ¶ 26).) W.W. provided the assistant branch manager with his true social security card and an authentic State of California identification card. (PSR, at 10 (PSR ¶ 26).) W.W.'s name and social security number matched the name and social security number associated with the accounts at the bank. (PSR, at 10 (PSR ¶ 26).)

The assistant branch manager asked W.W. a series of security questions associated with the accounts, which W.W. was unable to answer correctly because defendant had opened them using W.W.'s identity. (PSR, at 10 (PSR ¶ 27).) The manager called the telephone number associated with the accounts, which was defendant's number. (PSR, at 10 (PSR ¶ 27).) Defendant answered the call and the security questions correctly, and he stated no one in California should have access to his accounts. (PSR, at 10 (PSR ¶ 27).) The manager then called the Los Angeles Police Department ("LAPD"), which dispatched officers to investigate. (PSR, at 10 (PSR ¶ 27).)

Upon arrival, the officers spoke with defendant via telephone. (PSR, at 11 (PSR ¶ 28).) Defendant repeated what he had told the

12

manager and then faxed the officers a social security card, a Wisconsin driver's license, and a Kentucky birth certificate on the false pretense that defendant was the true W.W. (PSR, at 11 (PSR ¶ 28).) The officers arrested W.W. on a felony false impersonation charge, and a state court judge remanded W.W. to the Los Angeles County Jail without bail. (PSR, at 11 (PSR ¶ 28).)

Following his arrest, W.W. spent 428 days in jail and 147 days in a mental hospital. (PSR, at 13 (PSR ¶ 37).) During that time, defendant repeatedly made false statements to the LAPD and to the Los Angeles District Attorney's Office ("LADA"). (PSR, at 11-12 (PSR ¶¶ 29-35).)

On August 21, 2019, defendant spoke with an LAPD officer and explained away an apparent inconsistency in the identification documents he had sent to the LAPD the prior day. (PSR, at 11 (PSR ¶ 29).) Defendant then affirmatively stated to the officer "that he 'wishes to prosecute' the suspect that is 'using his identity.'" (PSR, at 11 (PSR ¶ 29).)

On October 31, 2019, the LADA filed a two-count information against W.W., charging the felony crimes of identity theft and false

13

impersonation.  (PSR, at 11 (PSR ¶ 30).)  Each crime was punishable by no less than 16 months, and as much as three years, of incarceration in a county jail.  (PSR, at 11 (PSR ¶ 30).)  W.W. was charged under a variation of defendant's name, "Kierans."  (PSR, at 11 (PSR ¶ 30).)

On February 20, 2020, after W.W.'s state public defender doubted W.W.'s mental competency, a state court judge ordered W.W. to a publicly funded California mental hospital.  (PSR, at 12 (PSR ¶ 31).)  The judge also ordered defendant to receive psychotropic medication.  (PSR, at 12 (PSR ¶ 31).)  On October 20, 2020, after a number of delays due to bedspace and COVID-19 related issues, W.W. was transported from the jail to the mental hospital.  (PSR, at 12 (PSR ¶ 31).)

While W.W. was incarcerated and hospitalized, defendant contacted the LAPD and LADA "numerous times" requesting updates.  (PSR, at 12 (PSR ¶¶ 32-35).)  Defendant falsely asserted that he was the victim of identity theft.  (PSR, at 12 (PSR ¶¶ 32-35).)  Defendant demanded updates and "requested that the assistant district attorney 'represent my concerns' with the delay in the criminal proceedings."  (PSR, at 12 (PSR ¶ 34).)

14

In March 2021, after spending a total of 428 days in jail and 147 days in a mental hospital, defendant pled "no contest" to both felony charges in exchange for a time-served sentence and a $400 fine. (PSR, at 13 (PSR ¶ 36).) In May 2021, the state court ordered W.W. to "use only their true name, 'Matthew Kierans,'" and not to use "W.W." (which was his true name). (PSR, at 13 (PSR ¶ 36).)

Defendant continued to perpetrate his identity theft crime upon W.W. after his release. Defendant "repeatedly made false reports and statements to law enforcement officials in Wisconsin and California." (PSR, at 13-15 (PSR ¶¶ 38-46, 48).) The State of California billed W.W. over $118,000 for his involuntary hospital stay. (R. Doc. 47-1, at 1 (Gov. Ex. 1).)

W.W. made numerous attempts to regain his identity from defendant. (PSR, at 13 (PSR ¶ 38).) On January 13, 2023, upon learning defendant was employed in Iowa, W.W. contacted the Iowa City hospital's security department and stated defendant had stolen his identity. (PSR, at 15 (PSR ¶ 47).) The hospital referred W.W.'s complaint to an experienced Iowa detective. (PSR, at 15 (PSR ¶ 47).)

15

Appellate Case: 25-1339    Page: 22    Date Filed: 10/08/2025 Entry ID: 5565739

In February 2023, the detective interviewed defendant. (PSR, at 15 (PSR ¶ 49).) Defendant repeatedly and falsely insisted that he was in fact the true W.W. (PSR, at 15 (PSR ¶ 49).) Defendant stated that, about four years prior, he learned there was a man, whom he believed to be "Matthew Kierans," "trying to get into his bank accounts, change addresses, and close or open accounts." (PSR, at 15 (PSR ¶ 49).)

In March 2023, the detective obtained a DNA sample from W.W.'s father in Kentucky and a DNA sample from W.W. (PSR, at 16 (PSR ¶ 50).) In June 2023, a comparison of the two DNA samples proved conclusively that defendant was the imposter and W.W. was the true W.W. (PSR, at 16 (PSR ¶ 50.) The detective had thus conclusively disproved defendant's lies and phony documents and unraveled defendant's three-decade identity theft scheme. (PSR, at 15-16 (PSR ¶¶ 47-52).)

In July 2023, the detective interviewed defendant a second time. (PSR, at 16 (PSR ¶ 52).) Initially, "defendant continued to falsely assert that he was '[W.W.]'." (PSR, at 16 (PSR ¶ 52).) For example, defendant insisted the man in California "was 'crazy' and 'needed help and should be locked up.'" (PSR, at 16 (PSR ¶ 52).)

16

Ultimately, after the detective confronted defendant with the DNA evidence, defendant admitted to using W.W.'s identity in every aspect of life requiring identification, including but not limited to taxes, insurance acquisition and claims, social security, driver's licenses, vehicle registrations, titles, deeds, loans, credit, and purchase agreements.  (PSR, at 16 (PSR ¶ 52).)  Defendant also admitted to providing fraudulent documents to the California and Wisconsin authorities to aid in the arrest, prosecution, and incarceration of W.W. (PSR, at 16 (PSR ¶ 53).)

## B.     *The District Court's Sentencing Findings*

At the sentencing hearing, the district court considered the undisputed portions of the PSR and other evidence, including proffers from the parties and documentary and videographic exhibits.  (TR 10-12, 14-18, 37, 82, 90.)  The government's exhibits consisted of Exhibit 1 through Exhibit 14E.  (TR 10-12; R. Doc. 47-1 through R. Doc. 47-7; R. Doc. 48-1 through 48-10; R. Doc. 53-1 through 53-5; R. Doc. 55-1 through 55-2.)  Defendant's exhibits comprised Exhibit A through Exhibit Y (R. Doc. 45-1 through 45-12; R. Doc. 46-1 through 46-9; R.

17

Doc. 57-1 through 57-2; R. Doc. 58-1 through 58-3), including Exhibit U

(R. Doc. 46-9), an affidavit from his wife. (TR 10-12.)

In imposing sentence, the district court stated at the outset that it

had "considered all the factors at Title 18 United States Code Section

3553(a), even if I don't mention each of them in my comments here."

(TR 76.) The district court found the offense conduct was "unique,

unusual, and egregious." (TR 76). The district court stated:

> The government's right to describe this as a Kafkaesque fact pattern, but it is wrong when it says that only Kafka could imagine a case like this. Victor Hugo imagined a case like this in *Les Misérables*. The protagonist, Jean Valjean, adopted the identity of another person. When that person was caught and was prosecuted and was facing prison time, Jean Valjean, though, did what the defendant did not do, and that was to come forward, admit his identity, and prevent the wrongful prosecution and incarceration of another individual under a false identity.
>
> Instead, the defendant did the exact opposite. He used and abused the criminal justice system to perpetuate his false identity. He intentionally sought the prosecution and incarceration of the victim in this case to put him away. It was a callous and criminal act by the defendant that reflects just the opposite of the moral and courageous character reflected by Victor Hugo. And so the example was there for the defendant on how to behave, the moral and high road, courageous high road, that he could have taken, and he chose to take a different road.
>
> Here, I flatly reject any allegation that the victim in this case committed any crime whatsoever or attempted to

18

Appellate Case: 25-1339     Page: 25     Date Filed: 10/08/2025 Entry ID: 5565739

commit any crime whatsoever.[6]  The government is right. The evidence from the underlying prosecution in California shows me beyond any doubt whatsoever that the victim only sought to close the account to evade him being held responsible for a debt owed by somebody else.  There's not a shred of evidence anywhere in this record that the victim in this case had any idea this account had a dime in it.

* * *

. . . I have no respect for the opinion of the county prosecutors out in LA.  They don't know what they're talking about.[7]  I was a prosecutor for more than 20 years.  I've been a judge for more than 10 years.  I was a defense attorney for several years.  I can look at this record, and there's absolutely no basis . . . for the victim ever to have been charged with anything in this case.  He was wrongfully incarcerated, and he was wrongfully prosecuted.  And no charge should ever exist against the victim for what he attempted to do, which was simply walk into the bank and close accounts to avoid somebody else using his name and racking up a debt.

So to the extent that any assertion is made here that the victim is at fault, I reject it.  Is the LAPD and the county prosecutors at fault?  Yes, but only because the defendant

---

[6] During the sentencing hearing, defendant had argued W.W.'s "incarceration was a result of his own criminal conduct in trying to steal my client's money" (TR 27-28) and defendant was "not responsible for the actions of the California criminal justice system when those actions were independently justified" (TR 26).

[7] Defendant had cited to the district court an email from an LADA supervisor to the Iowa detective in September 2023, in which the LADA declined to exonerate W.W. at that time because the supervisor did "not believe there is an issue with our conviction since [W.W.] did enter a bank and attempt to take money from an account that was not his."  (R. Doc. 58-1 (Def. Ex. H)); TR 57-59).

19

weaponized the criminal justice system to achieve his goals. And that's what I think is missing here by both sides. I don't think there's a proper focus on the extent of the criminal conduct by the defendant here.

The defendant manipulated the criminal justice system to prosecute an innocent man. He lied to prosecutors. He lied to law enforcement officers repeatedly. He attempted to use the system that – whose sole purpose of existence is to seek justice. And he attempted to deprive the victim of justice and to completely defraud the criminal justice system.

This is, in my view, very akin to an obstruction of justice. When he does this, he causes all of us to question the faith we can have in the criminal justice system. If this can happen to an innocent man out in California, how much can we trust our institutional actors? How much can we trust the court system? Where was justice? Where was the court system to step in front of the victim in this case to keep him from being victimized by the defendant?

And the defendant just used that system to manipulate the system, to seek the wrongful prosecution and incarceration of an innocent man. And that – that damage that he did to the criminal justice system far – in many ways far outreaches or at least equals the injustice that he committed to the individual person in this case.

* * *

. . . . [I]t is the defendant who armed that system to be using that system against the victim in this case, and that is reflected nowhere in the guidelines whatsoever.

The defendant, to be clear, is not responsible for the victim's homelessness. He's not responsible for the victim, if he has any mental struggles, for that. The defendant's theft of his identification did not cause any of the hardship the

20

victim may have suffered over the years up until 2019. The defendant did not use the victim's identity at the victim's expense to get rich. To the extent the defendant obtained a job and earned a good living and obtained credit, it was through his own hard work that he did so.

So there are other cases where it could be otherwise. A victim's identification could be taken in order to take the assets away from that victim or to somehow use that victim's identity to deprive that victim of income or assets at that victim's expense and to the defendant's benefit. And that didn't happen here, and so it's an unusual case in that sense.

The fact that the defendant lied repeatedly to law enforcement officers also I don't find is really fully reflected in the guidelines. False statements to law enforcement officers over and over and over again is part of the obstructive conduct as well, and that's not fully reflected. Even when the defendant's home was searched and he should have known that it was time to come clean, he continued to lie, at least initially, to the investigator, and only came forth when he was confronted with unrebuttable evidence and DNA. And so that failure to accept responsibility is significant.

Even here in his allocution, the apology is a general apology. The defendant did not apologize directly to the victim in this case. And so to that extent, the defendant still seems to have not recognized what he's done to an individual or apologized directly to that individual.[8]

As far as the harm and intent, I agree with [defense counsel] to the extent that I look at criminal culpability as really having two prongs to it: The harm actually caused

---

[8] In his allocation, among other things defendant stated, "I can't change the past. I would like to apologize to everybody hurt in one way or another in this whole mess." (TR 75.)

21

and the harm intended here. And so I want to address the causation issues here. It's clear from the PSR, from the unobjected-to portions of the PSR, but for the defendant's insistence that the victim be prosecuted, he would never have been prosecuted. Look at this realistically. A guy—a homeless guy walks into a bank. He has some mental struggles. He says something about somebody "stealing my identity" and he wants to close out these accounts or whatever.

The bank teller looks into it and realizes very quickly this guy doesn't really have anything to do with this account, calls the PD. The PD looks into it. No charges are brought yet. It's only because they ask the defendant if he wants to prosecute that they pursue charges against the defendant. And then they continue to charge because the defendant continuously and doggedly harasses the prosecutors in California, the investigators in California, to ensure that the victim is prosecuted.

It is probable, looking at the record here, that the victim in this case would have been sent to an institution to restore his sanity based on his statements he made alone to the Court looking at the transcript. But it sure as heck didn't help that on top of the other statements he made that appear to be delusional, he also kept insisting that he was somebody that everybody was convinced he was not.

In any event, none of that matters, because the victim in this case would not have been in a position where he would have been subject to being institutionalized but for . . . the defendant's insistence that the victim be prosecuted. But for that insistence, he wouldn't have been part of the criminal justice system. But for that, he would not have been detained.

\* \* \*

And so the defendant is solely and completely responsible, because but for his insistence in the false

22

Appellate Case: 25-1339     Page: 29     Date Filed: 10/08/2025 Entry ID: 5565739

identity and but for his insistence that the victim be prosecuted, the victim would never have been incarcerated in California, would never have been institutionalized, would never have been subjected to psychotropic drugs against his will. And so all of that falls directly at the feet of the defendant in this case.

What the victim was deprived of here is priceless. It's freedom. I can't imagine that the defendant thinks so glibly of his own lack of freedom, having been incarcerated, that he would describe it as "three hots and a cot," as he does to describe what the victim went through here. We value freedom so highly in our society that we use it as a form of punishment for people who commit crimes. It is a priceless freedom. And the defendant deprived the victim in this case of that priceless freedom. You cannot put a price on freedom. And the defendant knowingly, intentionally, and with callous disregard for the consequences deprived the victim of that priceless freedom in this case.

\* \* \*

Turning to the defendant's history and characteristics, the defendant in this case is 58 years old. He led a law-abiding life for most of his life. He was adopted. He does have some criminal history, which includes theft against his adoptive parents. It's hard for me to know exactly what his childhood was like because we have largely a self-report. And then to the extent that there's an affidavit from his wife, much of that affidavit, Exhibit U [(R. Doc. 46-9, at 1-3)[9]], is based upon what the defendant told her. And, candidly, it's hard to believe anything that the defendant has

_____

[9] Def. Ex. U is an affidavit from defendant's wife. The government had objected (R. Doc. 32) to much of the offender characteristics portion of the PSR to the extent it contained self-serving recitations of defendant's history and characteristics (PSR, at 30-32 (PSR ¶¶ 89, 90, 93, 94, 95, 106, 109)), and thus the district court did not consider those portions of the PSR in its factual findings (TR 90).

23

Appellate Case: 25-1339     Page: 30     Date Filed: 10/08/2025 Entry ID: 5565739

said.  So I put little weight in any of the information in Exhibit U that is attributed to the defendant telling something to his wife.  So it's very hard for me to tell exactly what kind of childhood or upbringing the defendant had.

At some point, without a high school education, though, the defendant remarkably did very well.  Somehow he moved forward in life, from a homeless state to obtaining a responsible job.  There's no evidence in this record that the defendant ever abused his position as a systems analyst for [the hospital] to do anything wrongful there.  And so while he held a critical post there, there's no hint or concern in the Court's mind that he did anything in that position to jeopardize that institution or victimize anybody else except for the victim in this case.

* * *

The defendant is . . .  not without criminal history, but his criminal history is quite dated.

(TR 77-87.)

With respect to the five grounds for upward departure under the guidelines that the USPO and the government had identified, the district court found "some of the grounds are informative to the Court" (TR 87) and "there are some guidelines to kind of speak to some of the nature and circumstances of the offense here, but the Court chooses not to be bound or constrained by the language of the guideline provisions."  (TR 88).  The district court then stated:

24

Appellate Case: 25-1339     Page: 31     Date Filed: 10/08/2025 Entry ID: 5565739

I have the authority under 3553(a) to fashion a sentence that I believe is appropriate. I find the guidelines here are helpful to me, to inform some thoughts here. I find the guidelines aren't fully applicable here, as I mentioned, because of the defendant's weaponization of the criminal justice system to achieve his own ends. It's not reflected in the guidelines anywhere and, in my view, is a form of obstruction of justice and calls into question and attacks the criminal justice system at its core. That's not reflected in the guidelines.

And so I am going to vary upward from the advisory guideline range that I have reached here because of the extreme and unusual conduct the defendant's engaged in, as I've described here.

So having considered all the factors at Title 18 United States Code Section 3553(a), I am granting an upward variance from the advisory guideline range. To be clear, the advisory guideline range that I calculated here is 12 to 18 months on Count 5 and the 2-year consecutive sentence on Count 7. I am going to vary upward to a total sentence of 12 years.

(TR 88-89).

## C. *Special Condition Relating to Mental Health*

The district court imposed a special condition requiring defendant

to "participate in a mental health evaluation" and "complete any

recommended treatment program." (R. Doc. 60, at 5; TR 87.)

Defendant's wife testified in an affidavit, "At some point after Matthew

and I started dating he told me he did attempt to commit suicide one

Appellate Case: 25-1339     Page: 32     Date Filed: 10/08/2025 Entry ID: 5565739

time in his past by drinking bleach mixed with Coca-Cola." (R. Doc. 46-9, at 2 (Def. Ex. U).) Defendant objected to the imposition of this special condition. (TR 7.) The district court overruled the objection because defendant had a history of attempted suicide. (TR 87, 90.)

### D.  *Special Condition Relating to Substance Abuse*

The district court imposed a special condition requiring defendant to "participate in a substance abuse evaluation" and to "complete any recommended treatment program." (R. Doc. 60, at 5; TR 87.) The district court imposed this special condition because of defendant's past substance abuse, albeit a "minor history." (TR 87.) Defendant admitted to using marijuana, methamphetamine, and LSD in the past. (PSR, at 32 (PSR ¶¶ 98-100).) Defendant stated his uses of marijuana and methamphetamine were each "once or twice," and he also stated his uses of all three controlled substances were more than 30 years ago. (PSR, at 32 (PSR ¶¶ 98-100).) To the detective, however, defendant had reported a history of being "'heavy into speed' (methamphetamine)". (PSR, at 17, 32 (PSR ¶¶ 54, 99).) Defendant did not object to the imposition of this special condition at the sentencing hearing.

26

## SUMMARY OF THE ARGUMENT

The nature and circumstances of defendant's offense conduct are especially aggravating. Defendant assumed another man's identity in all phases of life and for more than three decades. Defendant pursued the false arrest and prosecution of his victim, who was a homeless transient and an especially vulnerable member of society. As a result, defendant caused his victim to incur wrongful felony convictions in California state court and also to spend 428 days in jail and 147 days in a mental hospital, where the victim was forcibly medicated with psychotropic drugs. When confronted with his crime, defendant continued to lie to law enforcement and falsely allege that the victim had stolen defendant's own identity. Under these unusually aggravating circumstances, the district court did not abuse its substantial discretion in varying upward to a ten-year sentence on Count 5.

The district court did not abuse its discretion in requiring defendant to undergo a mental health evaluation and follow any recommended treatment plan. Defendant has attempted suicide in the past.

27

Appellate Case: 25-1339    Page: 34    Date Filed: 10/08/2025 Entry ID: 5565739

The district court did not plainly err in requiring defendant to undergo a substance abuse evaluation and follow any recommended treatment plan. Defendant has a history of polysubstance abuse, and his conflicting statements about the extent of his prior methamphetamine use further support imposition of the condition.

28

# ARGUMENT

## I. Defendant's Sentence Was Substantively Reasonable

### A. Standard of Review

This Court reviews attacks on the substantive reasonableness of a sentence for an abuse of discretion. *United States v. Johnson*, No. 24-1769, 2025 WL 2406862, at \*4 (8th Cir. Aug. 20, 2025) (citing *United States v. Nosley*, 62 F.4th 1120, 1130 (8th Cir. 2023)).

> "A district court abuses its discretion if it 1) fails to consider a significant factor it should have, 2) gives significant weight to an improper or irrelevant factor, or 3) considers the appropriate factors but commits a clear error of judgment in weighing them." *United States v. Soliz*, 857 F.3d 781, 783 (8th Cir. 2017). "[S]ubstantive appellate review in sentencing cases is narrow and deferential." *United States v. Feemster*, 572 F.3d 455, 464 (8th Cir. 2009) (en banc) (internal quotation marks omitted). . . . . "The district court has wide latitude to weigh the relevant sentencing criteria . . . . Mere "disagreement with how the district court weighed the relevant sentencing factors does not justify reversal." *Id.*

*Johnson*, No. 24-1769, 2025 WL 2406862, at \*4. "[I]t will be the unusual case when [this Court] reverse[s] a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." *Feemster*, 572 F.3d at 464.

29

**B.** ***The District Court Did Not Abuse its Discretion in Varying Upward from the Advisory Sentencing Guidelines in Light of Defendant's Aggravating Offense Conduct***

Defendant argues the district court's ten-year sentence on Count 5 is substantively unreasonable, because the district court committed a "clear error of judgment" in weighing the § 3553(a) factors and failing to consider relevant and significant factors. Defendant's argument lacks merit.

At the outset, defendant alleges the district court demonstrated a clear error in judgment in giving "little weight" to his wife's affidavit when balancing the § 3553(a) factors, yet relied on part of the same affidavit to justify imposition of a special condition of supervision relating to mental health. (R. Doc. 46-9, at 1-2.) There was no clear error of judgment in the district court's reasoning. The district court was free to credit the one paragraph of the wife's affidavit that corroborated defendant's own statement that he had attempted suicide and discount most or all of the remainder of the affidavit. *See United States v. Bates*, 614 F.3d 490, 495 (8th Cir. 2010) ("The court was entitled to believe that he was not a user of crack cocaine, while disbelieving other portions of his testimony.") (quoting *United States v.*

30

*Candie*, 974 F.2d 61, 65 (8th Cir. 1992) for the proposition that, "Like any other factfinder who assesses witness credibility, the sentencing judge is free to believe all, some, or none of a witness's testimony.")).

The remainder of defendant's substantive reasonableness argument devolves into a disagreement with how the district court weighed the § 3553(a) factors. Defendant argues that the district court focused too much on the harms that W.W. endured and too little upon defendant's gainful employment, and he argues that the district court overlooked the fact that defendant was paying back his loans on time and not causing the kind of monetary harm typically found in fraud cases. But this Court has repeatedly held that a district court does not abuse its "considerable discretion" at sentencing by weighing the § 3553(a) factors differently from what a defendant prefers. *See United States v. Holmes*, 87 F.4th 910, 916-17 (8th Cir. 2023) (citing *United States v. Wickman*, 988 F.3d 1065, 1067 (8th Cir. 2021) ("A defendant's dissatisfaction with a district court's balancing of the § 3553(a) factors does not indicate that the district court abused its discretion.")).

"[D]istrict courts have 'wide latitude' in weighing the § 3553(a) factors and assigning weight to each of those factors." *Wickman*, 988

31

F.3d at 1067 (quoting *United States v. Bridges*, 569 F.3d 374, 379 (8th Cir. 2009)).  In this case, the district court varied upward after considering the guidelines, defendant's highly aggravating offense conduct, and his personal circumstances to the extent the district court believed the evidence on that latter point.

Specifically, after stating that it had considered all of the § 3553(a) factors (TR 76), the district court found the nature and circumstances of defendant's offense was "unique, unusual, and egregious" (TR 76).  The district court emphasized that defendant "used and abused the criminal justice system to perpetuate his false identity" and "intentionally sought the prosecution and incarceration of the victim in this case to put him away." (TR 77).  The district court stated defendant "manipulated the criminal justice system to prosecute an innocent man," lying to prosecutors and investigators alike, in order "to deprive the victim of justice and to completely defraud the criminal justice system." (TR 79, 82).  The district court likened defendant's conduct to an obstruction of justice and, further, cited the systemic effects of defendant's actions upon the faith of the public in the criminal justice system.  (TR 79-80.)

32

Appellate Case: 25-1339     Page: 39     Date Filed: 10/08/2025 Entry ID: 5565739

The district court expressly acknowledged many of defendant's arguments in mitigation, namely, that defendant did not cause the victim's initial mental struggles or homelessness, was gainfully employed, and did not profit from the identity theft. (TR 81, 83, 85-87.) Defendant's disagreement with the district court's decision to weigh the aggravating factors in this case more heavily than the mitigating factors does not warrant reversal in light of the substantial discretion this Court affords to district courts at sentencing. *See United States v. Pratt*, 142 F.4th 1090, 1094-95 (8th Cir. 2025) (citing *United States v. Haskins*, 101 F.4th 997, 1000 (8th Cir. 2004), for the proposition that "disagreement with how the district court weighed the relevant sentencing factors does not warrant reversal").

Defendant argues that the district court "made speculative findings that W.W. was only charged and incarcerated due to Keirans's insistence." (Def. Br. 27 (citing TR 83-84).) Defendant concedes "the only reason the incarceration was possible was Keirans' conduct" but insists it is "speculative to assert that W.W. would have been 'let go' without Keirans's comments." (*Id.*) Defendant points out the bank

33

teller contacted the LAPD on the teller's own and not on defendant's demand. (Def. Br. 27 (citing PSR, at 10 (PSR ¶ 27).).

The district court directly considered this causation issue, and its findings were not speculative. The district court acknowledged the bank teller initially called the LAPD but pointed out that, after the LAPD looked into the situation, "[n]o charges are brought yet." (TR 83.) The district court observed that it was only when the LAPD asked defendant if he wanted to pursue charges, and defendant said yes, that charges were filed against W.W. (TR 83.) "And then they continue to charge because the defendant continuously and doggedly harasses the prosecutors in California, the investigators in California, to ensure that the victim is prosecuted. (TR 83.)

The district court further acknowledged that W.W. "would have been sent to an institution to restore his sanity based on his statements he made alone to restore his sanity based on his statements he made alone to the Court looking at the transcript." (TR 83.) But the district court stated

> none of that matters, because the victim in this case would
> not have been in a position where he would have been
> subject to being institutionalized but for . . . the defendant's
> insistence that the victim be prosecuted. But for that

Appellate Case: 25-1339    Page: 41    Date Filed: 10/08/2025 Entry ID: 5565739

insistence, he wouldn't have been part of the criminal justice system. But for that, he would not have been detained.

(TR 83-84.) The district court's findings in this regard are amply supported in the record. (PSR, at 11 (PSR ¶ 28) (W.W. arrested only after LAPD officers spoke with defendant by phone, and defendant provided false documents in attempt to show defendant was the true "W.W."); (PSR, at 11 (PSR ¶ 29) (LAPD forwarded charges to the LADA only after "defendant told the officer of the LAPD that he 'wishes to prosecute' the suspect that is 'using his identity'"); PSR, at 12-15 (PSR ¶¶ 32-46) (detailing defendant's repeated contacts with the LAPD and the LADA in an attempt to check on and pursue W.W.'s wrongful prosecution).

In sum, defendant's sentence was substantively reasonable, because the district court did not overlook a relevant factor, give significant weight to an improper or irrelevant factor, or commit a clear error of judgment in weighing relevant factors. *Soliz*, 857 F.3d at 783.

Appellate Case: 25-1339     Page: 42     Date Filed: 10/08/2025 Entry ID: 5565739

## II. The District Court Did Not Abuse Its Discretion in Imposing a Mental Health Condition

### A. Standard of Review

This Court reviews the district court's imposition of a timely challenge to a condition of release for an abuse of discretion. *United States v. Thomas*, 149 F.4th 972, 975 & n.4 (8th Cir. 2025).

### B. A Mental Health Condition Was Appropriate for Defendant

"[A] district court is afforded wide discretion in imposing conditions of supervised release, so long as they meet the requirements of 18 U.S.C. § 3583(d)." *United States v. Adams*, 12 F.4th 883, 888 (8th Cir. 2021). Under § 3583(d),

> . . . any special condition: (1) "must be reasonably related to the nature and circumstances of the offense and the history and characteristics of the defendant, deterrence of criminal conduct, protection of the public, and treatment of the defendant's correctional needs"; (2) cannot deprive the defendant of liberty "greater than reasonably necessary for the purposes of deterring criminal conduct, protecting the public from the defendant, and treating the defendant's correctional needs"; and (3) "must be consistent with pertinent Sentencing Commission policy statements."

*Id.* (quoting *United States v. Mayo*, 642 F.3d 628, 631 (8th Cir. 2011) (per curiam)).

*Thomas*, 149 F.4th at 975-76.

36

As discussed in Part I.B above, the district court credited the testimony of defendant's wife in her affidavit that defendant had reported attempting to commit suicide approximately three decades ago. (*See* R. Doc. 46-9 (Def. Ex. U), at 1-2.) Over defendant's objection, the district court imposed a mental health condition and ordered defendant to "participate in a mental health evaluation" and "complete any recommended treatment program." (R. Doc. 60, at 5; TR 87.) The district court cited defendant's history of attempted suicide in support of its decision to impose the condition. (TR 87, 90.)

The district court did not abuse its wide discretion in requiring defendant to complete a mental health evaluation and comply with any recommended treatment. The district court, as a threshold matter, only required defendant to undergo an evaluation, which impacts a minimal liberty interest. Only if the evaluation determines that a course of treatment is required would anything further be required of defendant. The mental health condition was grounded in defendant's own history of attempted suicide.

This mental health condition was grounded in an individualized analysis of the "history and characteristics of the defendant,"

37

Appellate Case: 25-1339     Page: 44     Date Filed: 10/08/2025 Entry ID: 5565739

§ 3553(a)(1), in light of his prior suicide attempt.  Because mental health treatment and medication would only be required if the mental health evaluation indicates a need for such treatment, the special condition is narrowly tailored and "involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D)."  18 U.S.C. § 3583(d)(2); *cf. United States v. Williams*, 30 F.4th 796, 801 (8th Cir. 2022) (in discussing potential for compliance with a medication regimen, reiterating that "speculative harms do not justify reversal of special conditions when the defendant can seek modification of the condition 'should a more concrete problem arise'") (quoting *United States v. Trimble*, 969 F.3d 853, 858-59 (8th Cir. 2020)).

Defendant's reliance on *United States v. Kent*, 209 F.3d 1073 (8th Cir. 2000), is misplaced.  In *Kent*, this Court held the district court abused its discretion in requiring a defendant to undergo psychiatric counseling based on an incident of physical abuse against his wife that occurred approximately 13 years prior.  209 F.3d at 1075-78.  But in *Kent*, (1) the district court "expressly admitted that it did not believe Kent presented a threat to anyone except possibly [the defendant's

38

wife]"; (2) the defendant's offenses of conviction were completely unrelated to the imposed condition; and (3) the district court "had no reason to believe that psychiatric counseling was necessary" in part because the defendant's wife admitted that the defendant had not physically abused her since the past incident.

In this case, the district court tied imposition of the mental health condition to defendant's prior suicide attempt. Further, defendant's own admitted conduct in the highly unusual activity of living under another man's identity for three decades supports imposition of the condition here. In light of this highly unusual and longstanding behavior, a mental health evaluation involves no greater deprivation of liberty than is reasonably necessary under the totality of the circumstances. *Cf. United States v. Hicks*, No. 21-1732, 2022 WL 711546, at *2 (8th Cir. Mar. 10, 2022) (unpublished) (stating that a defendant's "erratic and obstructive behavior over an extended time coupled with his own claim that he suffers from severe mental illness" supported imposition of mental health condition).

In sum, the district court did not abuse its discretion in imposing a mental health condition in this case.

39

### III. The District Court Did Not Plainly Err in Imposing a Substance Abuse Condition

#### A. Standard of Review

Generally, when a defendant fails to object, this Court reviews for plain error. *United States v. Schultz*, 845 F.3d 879, 881 (8th Cir. 2017) (citing *United States v. Roberts*, 687 F.3d 1096, 1100 (8th Cir. 2012)). "To obtain relief under a plain-error standard of review, the party seeking relief must show that there was an error, the error is clear or obvious under current law, the error affected the party's substantial rights, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *United States v. Poitra*, 648 F.3d 884, 887 (8th Cir. 2011)).

#### B. A Substance Abuse Condition Was Appropriate for Defendant

The district court stated during the sentencing hearing that it would apply a substance abuse condition and its reasons for doing so, and defendant did not object at that time. (TR 87.) Defendant argues this Court nonetheless should review the imposition of the substance abuse condition for an abuse of discretion. (Def. Br. 28-29.) Defendant states "[t]he district court imposed the special condition on substance

40

abuse evaluation and treatment without notice or opportunity for objection." (Def. Br. 28.)

Defendant's reliance upon *United States v. Smith*, 961 F.3d 1000 (8th Cir. 2020) and *United States v. Sherwood*, 850 F.3d 391 (8th Cir. 2017) is misplaced. In *Smith*, this Court reviewed the imposition of a condition of release for an abuse of discretion when the defendant "had no opportunity to object to the new condition at a hearing." 961 F.3d at 1007. Here, by contrast, the district court stated it was imposing the condition at the sentencing hearing, and defendant stood silent and did not object, so plain error review applies. *Schultz*, 845 F.3d at 881.

In *Sherwood*, the defendant objected to a financial condition of release in the district court but did not receive advance notice of it. 850 F.3d at 395. On appeal, the government argued this Court should review for plain error, because the defendant's objection in the district court was insufficiently specific. *Id.* This Court reviewed for an abuse of discretion, stating that "lack of notice of an unexpected condition 'may make it difficult for the defendant to mount an effective challenge to it.'" *Id.* (quoting *United States v. Bryant*, 754 F.3d 443, 444 (7th Cir. 2014)). However, this Court cautioned that "[a]dvance notice of

41

supervised release conditions 'fits into the category of recommended 'best practice' rather than mandatory requirement.'" *Id.* (quoting *United States v. Kappes*, 782 F.3d 828, 842 (7th Cir. 2015)). "Thus, lack of notice will not excuse a defendant's total failure to object to special conditions at sentencing." *Id.* (citing *United States v. Ristine*, 335 F.3d 692, 694 (8th Cir. 2003)).

This Court should not excuse defendant's total failure to object to the special condition relating to substance abuse in this case. The plain error standard of review should apply. In *Sherwood*, the court rejected the government's argument that plain error review applied because the objection was not sufficiently specific; this Court did not expect the defendant to make a specific objection when he had no advance notice. Here, the defendant did not object at all, and the "total failure" language from *Sherwood* applies.

The district court did not err, plainly or otherwise, in requiring defendant to undergo a substance abuse evaluation and any recommended treatment. Any error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings.

Appellate Case: 25-1339     Page: 49     Date Filed: 10/08/2025 Entry ID: 5565739

The district court imposed a special condition requiring defendant to "participate in a substance abuse evaluation" and "complete any recommended treatment program."  (R. Doc. 60, at 5; TR 87.)  As with the mental health condition, the district court merely ordered defendant to undergo an evaluation in the first instance, which is narrowly tailored and impacts a minimal liberty interest.  Only if the evaluation determined that a course of treatment is required would anything further be required of defendant.

The district court ordered the substance abuse condition based on defendant's own history of polysubstance abuse, and the condition was based on an individualized analysis of the "history and characteristics of the defendant," § 3553(a)(1).  Because it only requires an evaluation in the first instance, the special condition is narrowly tailored and involves "no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D)."  18 U.S.C. § 3583(d)(2).

The district court imposed this special condition because of defendant's past polysubstance abuse, albeit a "minor history."  (TR 87.) Defendant admitted using marijuana, methamphetamine, and LSD in

43

Appellate Case: 25-1339     Page: 50     Date Filed: 10/08/2025 Entry ID: 5565739

the past.  (PSR, at 32 (PSR ¶¶ 98-100).)  Defendant stated his uses of marijuana and methamphetamine were each "once or twice," and he also stated his uses of all three controlled substances were more than 30 years ago.  (PSR, at 32 (PSR ¶¶ 98-100).)  To the detective, however, defendant had reported a history of being "'heavy into speed' (methamphetamine)".  (PSR, at 17, 32 (PSR ¶¶ 54, 99).)  Defendant's erratic behavior over the last thirty years, coupled with his inconsistent self-reporting about his substance abuse history, further justified the district court's imposition of the condition of release.  *Cf. Hicks*, 2022 WL 711546, at *2 (stating that a defendant's "erratic and obstructive behavior over an extended time coupled with his own claim that he suffers from severe mental illness" supported imposition of mental health condition).  In any event, any error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings.

## CONCLUSION

For the above reasons, defendant's sentence should be affirmed.

Respectfully submitted,

TIMOTHY T. DUAX
United States Attorney

By: */s/ Timothy L. Vavricek*

44

45

TIMOTHY L. VAVRICEK
Assistant United States Attorney
111 Seventh Avenue SE, Box 1
Cedar Rapids, Iowa  52401
(319) 363-6333
(319) 363-1990 (fax)
tim.vavricek@usdoj.gov

Appellate Case: 25-1339    Page: 52    Date Filed: 10/08/2025 Entry ID: 5565739

# CERTIFICATE OF FILING AND SERVICE

I certify that, on October 7, 2025, I electronically filed the foregoing brief with the Clerk for the Eighth Circuit Court of Appeals by using the CM/ECF system.  The electronic brief and the addendum attached to the brief, if any, have been scanned for viruses using McAfee and the scan showed no virus.

I further certify that, on October __, 2025, I submitted ten paper copies of the brief to the Clerk of Court and one paper copy to each party separately represented or proceeding pro se.

TIMOTHY T. DUAX
United States Attorney

By: /s/ Hollie A. Dickinson

_____

Legal Assistant

Copies to:
Heather Quick
First Assistant Federal Defender
Federal Public Defender's Office
222 Third Avenue SE, Suite 290
Cedar Rapids, Iowa 52401

46

Appellate Case: 25-1339    Page: 53    Date Filed: 10/08/2025 Entry ID: 5565739

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I certify that the foregoing brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief uses a proportional-spaced typeface, fourteen-point Century Schoolbook font. Based on a count under Microsoft Word for Windows, the brief contains 9,139 words, excluding the parts of the brief exempted by Rule 32(f).

TIMOTHY T. DUAX
United States Attorney

By: /s/ Timothy L. Vavricek

TIMOTHY L. VAVRICEK
Assistant United States Attorney

Appellate Case: 25-1339    Page: 54    Date Filed: 10/08/2025 Entry ID: 5565739